*11
 
 Ruffin, C. J.
 

 The sole question is, whether, in the division of this fund, which is considered real estate, the son, John P. Johnston, and the children of the last marriage, who are the petitioners, are to be admitted to shares without accounting for the value of the lands, which those persons take by the devises in the will. The point, then, is precisely that decidedyn
 
 Norwood
 
 v.
 
 Branch, 2
 
 No. Ca. Law Repos. 598. As was mentioned by my brother Daniel, in
 
 Brown
 
 v.
 
 Brown, 2
 
 Ired. Eq. 309, the profession has never been satisfied with that decision, and it is known that several, if not all of the Judges who made it, afterwards disapproved of if. The opinion given sets out -with the observation, that the great object of the acts of descents, 1784 and. 1795, is to make the estates of children, entitled to the. inheritance, as nearly equal as possible. But surely that intention is not more clearly to be collected from those acts, which respect the division of real estate descended, than it is from the act of distributions of personal estate, 1760, and the English act of 22 and 23, Car. 2, from which ours is copied. Sir Joseph Jekyl said, that such equality of provision for children was the end and intent of the statute. Yet from the beginning, it was held, that land devised or legacies bequeathed, were not advancements, to be brought into hotch-pot in the distribution of a surplus undisposed of by the ancestor’s will. Indeed, each of the acts particularly expresses that intent, and in the very same words :
 
 “
 
 as shall make the estate of all the children to be equal, as near as can be estimated.” That,
 
 therefore,
 
 can afford no reason for a.difference of construction. Chief Justice Taylor then mentions, that the use of the term “ settle” in the act of 1784, and that of ■“ life-time” in the act of Car, 2, and our act of 1766, authorises the different interpretations there adopted. And this is the whole ground of the opinion. Now, that is entirely a mistake, as it seems to us. For it will be seen that the acls of distribution use both the words “ settle”
 
 *12
 
 and “ life-time,” applying the former to advancements in land, and the latter to portions. The words are, “ one-third part of the surplus to the wife of the intestate, and all the rest by equal portions to and among the children of such person dying intestate, other than such child or children, (not being heirs at law) who shall have any
 
 estate
 
 by the
 
 settlement
 
 of the intestate, or shall be
 
 advanced
 
 by the intestate in his
 
 life-time
 
 by
 
 portion
 
 or
 
 portions,
 
 equal, &c.” The construction plainly is, that if a child has a “settled estate,” equal to a share of the other children in the distribution,
 
 or
 
 has “ a portion advanced in the life-time” of the intestate, equal to a share, such child shall have no more. So that if the reasoning of
 
 Norwood
 
 v.
 
 Branch
 
 had been applied to the statute of distributions, it would have produced this result; that gifts of real estate in the will would, as a settlement, exclude the devisee from any part of the surplus of personalty, not disposed of by the will, while a legacy in the same will would not exclude. But the true ground, on which, under the statutes of distribution, settlements or advancements were not to be brought into hotch-pot, when there was a will, is, that the language of the acts and their purpose, points only to an “ intestate.”
 
 Walton
 
 v.
 
 Walton,
 
 14 Ves. 324.
 
 Brown
 
 v.
 
 Brown,
 
 2 Ired. Eq. 309. The Legislature intended an inequality between children, when the parent did not himself produce an inequality. Therefore, when the parent dies intestate, the act operates. But, when he disposes of his own estate by will, the law does not interfere ; and, if he disposes of part only, the law does not interfere with his dispositions, as far as he has made them by his will, but suffers that inequality to stand and divides the residue equally. Suppose a father to have two sons, and to the elder he devises land worth £1000, and to the younger land worth £500 and personalty worth £500, and leaves personalty undisposed of to the value of £1000'. It could not be possible the Legislature meant, that. the second son should have all the land descended, making
 
 *13
 
 his share of the realty £1000, as well asjris brother’s, and then that they should divide the £1Q00 personalty equally, as it is admitted, notwithstanding his legacy of £500, they must do in respect of the personalty. So, the very giving’ to one son, by the will, more than to another, shews, ' that the parent, for reasons satisfactory tq his own mind, intended a greater bounty to the one than the other; and that intention the law di4 not mean to counteract. It directs an equality, because it presumes the parent would naturally wish it. But here the parent creates the inequality by his own will, and the law never intended to thwart him. The rule, therefore, was not founded so much on “’life-time” as “ intestate the latter shewing, that the subject within the purview of the act was the estate of a man, who had not undertaken to divide his estate among’ his children, but had left the whole matter to the law to regulate. Now, the act of 1784, in like manner, in respect to descents to children, expressly uses the word “ intestate” — saying, “ when any person, having any right to any estate or inheritance of land in fee simple,
 
 and such person shall die intestate,
 
 his or her estate shall descend to all the sons, &c. other than such son a.s shall have lands settled on him iq fee simple,” &c. There seems, therefore, to have been no distinction between the statute of descents and the statute of distributions in this respect. We are not aware, that the question has cver come directly before the Court since, df it had come before the Judges, who adopted it, we are almost sure, from what we know, that they would have corrected the construction. But whether the present Court would have felt the same liberty of action is more doubtful, as it is better, perhaps, to leave it tq the Legislature to enact a new law, as they may deem fit, rather than produce that uncertainty which arises from conflicting judicial decisions. And we believe that the Court would have adhered to
 
 Norwood
 
 v.
 
 Branch,
 
 if the Legislature had not, by recent enactments, plainly given us to understand,
 
 *14
 
 what is deemed by that body the proper principle applicable to such casos. By the Act of 1844, c. 51, the real and personal estates of parents are made one fund in respect to advancements, and it is expressly confined to cases where “ any person shall die
 
 intestate,
 
 who in his or her
 
 life-time advanced
 
 to any child personal property,” and *• when any person shall die
 
 intestate
 
 seized and possessed of any real estate, who had in his or her
 
 life-time settled
 
 any real estate on any child.” It is thus seen, that the Legislature thought it right to refer the settlement of land to the life-time of the intestate parent, as well as the advancement of a portion; and; we think, it cannot be doubted that it was always so intended. This removes every difficulty; because we cannot suppose the Legislature meant, that gifts of land by will, or in the life-time of a parent not dying intestate, should not exclude from the surplus of personalty, when there is a partial intestacy, but should exclude from the undevised realty, when at the same time it is not so
 
 vice versa
 
 — that is to say, that gifts of personalty by the will, or in the testator’s life-time, Avould not exclude the donee from sharing in the land. We cannot thus suppose, because the act of 1844 puts the íavo kinds of estate, real and persona], on precisely the same footing in Avords, and must have meant that they should be so in fact. We think, therefore, that devises by a parent to a child arc not to be brought into hotch-pot with land not disposed of by the will, but the land descended is to be divided, as if that were the whole real estate of AAdiich the parent had ever been seised. There must be a decree accordingly. .
 

 Per Curiam.
 

 Decreed accordingly.